**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF INDIANA**

**SOUTH BEND DIVISION**

| | |
|---|---|
| MICHAEL ADENIYI and GRACE ADENIYI,                             ) ) | |
|          PLAINTIFFS,        ) ) | |
| V.                                       ) ) | Civil Action No. _3:22-cv-447_____ |
| KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; PHILIPS HOLDING USA, INC.; and PHILIPS RS NORTH AMERICA LLC;     ) ) ) ) | **JURY DEMAND** |
|          DEFENDANTS.      ) ) | |

**COMPLAINT**

Plaintiffs MICHAEL ADENIYI and GRACE ADENIYI submit the following Complaint and Demand for Jury Trial against Defendants Koninklijke Philips N.V.("Royal Philips"), Philips North America LLC ("Philips NA"), Philips Holding USA, Inc.("PHUSA"), and Philips RS North America LLC ("Philips RS") (collectively referred to as "Philips" or the "Defendants") and allege:

**INTRODUCTION**

1.     Philips manufactures, markets, sells, and distributes a variety of products for sleep and home respiratory care.

2.     Philips manufactures, markets, imports, sells, and distributes a variety of Continuous Positive Airway Pressure (CPAP) and BiLevel Positive Airway Pressure (BiLevel PAP) devices for patients with obstructive sleep apnea ("OSA").

3.     Philips also manufactures, markets, imports, sells, and distributes a variety of ventilator devices for patients with respiratory conditions.

4.      On June 14, 2021, Philips issued a recall notification for many of its CPAP and BiLevel PAP devices as well as a number of its ventilator devices.

5.      In its recall notification, Philips advised of potential health risks related to the sound abatement foam used in the affected devices.

6.      Philips informed patients using these affected devices of potential risks from exposure to degraded sound abatement foam particles and exposure to chemical emissions from the sound abatement foam material.

7.      Specifically, Philips notified patients that the risks related to issues with the sound abatement foam include headache, irritation, inflammation, respiratory issues, and possible toxic and carcinogenic effects.

8.      Plaintiff MICHAEL ADENIYI was prescribed and purchased two of Philips' recalled devices, a Dreamstation CPAP and a System One 60 series unit, to treat his obstructive sleep apnea. Hereafter "Plaintiff" is used to refer to MICHAEL ADENIYI with "Plaintiffs" used to refer to MICHAEL ADENIYI and GRACE ADENIYI.

9.      Plaintiff used a Dreamstation CPAP, Serial Number J199772173D3A, one of Philips' recalled devices, for a number of years. He also used for a number of years a System One 60 series unit, Serial Number P106803809E8, also one of the Philips recalled devices. Hereafter, these two units are referred to as the "subject devices."

10.     In November 2021, Plaintiff was diagnosed with Stage IV left lower lung adenocarcinoma.

11.     As a direct and proximate result of Philips' conduct, Plaintiff has suffered serious and substantial life-altering injuries.

12.     As a direct and proximate result of the subject devices, manufactured, marketed, imported, sold, and distributed by Philips, Plaintiff has suffered physical, emotional, and financial

injuries, including, but not limited to, an inflammatory respiratory response, adverse effects to organs and/or cancer.

## PLAINTIFFS

13.    Plaintiffs MICHAEL and GRACE ADENIYI are adults and residents of Granger, Indiana.


14.    Plaintiffs are citizens and have been residents of Granger, Indiana since approximately 2003.


15.    Plaintiff MICHAEL ADENIYI was prescribed the use of the subject devices while a resident of Granger, Indiana, he purchased the subject devices in Indiana, and the majority of his use of the subject devices occurred in Indiana.

## DEFENDANTS

16.    Defendant Koninklijke Philips N.V. ("Royal Philips") is a public limited liability company established under the laws of The Netherlands, having its principal executive offices at Philips Center, Amstelplein 2, 1096 BC Amsterdam, The Netherlands. Royal Philips is the parent company of Philips NA and Philips RS. Royal Philips can be served with process via the *Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters* ("Hague Service Convention").

17.    Defendant Philips North America LLC ("Philips NA") is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141. Philips NA is a wholly-owned subsidiary of Royal Philips. Upon information and belief, Philips NA manages the operation of Royal Philips' various lines of business, including Philips RS, in North America. The sole member of Philips NA is PHUSA, which is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts

02141.  Philips NA may be served through its registered agent, Corporation ServiceCompany, at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

18.    Defendant Philips Holding USA, Inc. ("PHUSA") is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141. PHUSA is a holding company that is the sole member of Defendant Philips NA. PHUSA may be served through its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

19.    Defendant Philips RS North America LLC ("Philips RS") is a Delaware corporation with its principal place of business located at 6501 Living Place, Pittsburgh, Pennsylvania 15206. Philips RS was formerly operated under the business name Respironics, Inc. ("Respironics"). Royal Philips acquired Respironics in 2008. Philips RS may be served through its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

20.    Royal Philips, Philips NA, PHUSA, and Philips RS are hereinafter collectively referred to as "Philips" or the "Defendants."

## JURISDICTION AND VENUE

21.    At all times pertinent to this Complaint, Defendants were and are in the business of designing, manufacturing, marketing, promoting, advertising, and selling devices for the treatment of obstructive sleep apnea, including the Dreamstation CPAP prescribed for and purchased by Plaintiff at issue in this lawsuit (the "subject devices").

22.    At all times pertinent to this Complaint, Defendants were the mere alter egos or instrumentalities of each other. There is such a unity of interest and ownership between Defendants that the separate personalities of their entities ceased to exist.  Defendants operated as

---

[1] *Philips announces completion of tender offer to acquire Respironics*, WEB WIRE, https://www.webwire.com/ViewPressRel.asp?aId=61199 (accessed June 30, 2021).

a single enterprise, equally controlled each other's business affairs, commingled their assets and funds, disregarded corporate formalities, and used each other as a corporate shield to defeat justice, perpetuate fraud and evade contractual and/or tort liability.

23.    At all times pertinent to this Complaint, Defendants acted in all respects as agents or apparent agents of one another.

24.    At all times pertinent to this Complaint, Defendants acted in concert in the designing, manufacturing, marketing, promoting, advertising, and selling of devices for the treatment of obstructive sleep apnea, including the subject devices. Defendants combined their property and labor in a joint undertaking for profit, with rights of mutual control over each other, rendering them jointly liable to Plaintiff.

25.    Defendants regularly transact business in Indiana that includes marketing and sellingdevices for the treatment of obstructive sleep apnea, derive substantial revenue from their businesstransactions in Indiana, and have purposely availed themselves of the privilege of doing business inIndiana.

26.    Defendants shipped or participated in shipping the subject devices and other devices with the reasonable expectation that the devices could or would find their way to Indiana through the stream of commerce.

27.    Defendants' actions in marketing and selling their devices in Indiana should have led them to reasonably anticipate being summoned into Court in Indiana.

28.    Defendants have sufficient "minimum contacts" with Indiana that subjecting them topersonal jurisdiction in Indiana does not offend traditional notions of fair play and substantial justice.

29.     As detailed below, Plaintiffs suffered injuries and losses in St. Joseph County, Indiana from thesubject devices that Defendants negligently designed and/or manufactured either in Indiana or outside of Indiana. Thus, Defendants committed a tort either in Indiana or outside of Indiana that caused injuries in Indiana, and the Court has personal jurisdiction.

30.     This Court has personal jurisdiction over Philips NA, PHUSA, and Philips RS because of their systematic and continuous contacts with Indiana as well as their maintenance ofa registered agent for service of process in Indiana.

31.     This Court has personal jurisdiction over Royal Philips because of its systematic and continuous contacts with Indiana.

32.     This Court has original jurisdiction in this matter pursuant to 28 U.S.C. §1332(a)(1) and §1332(a)(2), as there is complete diversity between Plaintiffs and Defendants and the amount in controversy exceeds $75,000.

33.     There is complete diversity between Plaintiffs and all of the members comprising Philips NA and Philips RS.

34.     This Court is a proper venue for this civil action pursuant to 28 U.S.C § 1391(b)(2) and Tex. Civ. Prac. & Remedies Code Sec. 15.002, as the event giving rise to the Plaintiffs' claims occurred in St. Joseph County, Indiana.

35.     This Court's exercise of personal jurisdiction over Defendants comports with due process.

## **BACKGROUND**

36.     At all relevant times, Defendants manufactured, marketed, sold, and distributed a lineup of CPAP and BiPAP devices as well as ventilator devices under its "Sleep & Respiratory

Care" portfolio.  These devices are designed to assist individuals with a number of sleep, breathing, and other respiratory conditions, including sleep apnea.

37.    Defendants sought and obtained Food and Drug Administration ("FDA") approval to market the Recalled Devices, including the subject devices used by Plaintiff, under Section 510(k) of the Medical Device Amendment to the Food, Drug and Cosmetics Act. Section 510(k) allows marketing of medical devices if the device is deemed substantially equivalent to other legally marketed predicate devices marketed prior to May 28, 1976. No formal review for safety or efficacy is required.

**A. Continuous Positive Airway Pressure Therapy**

38.    Continuous Positive Airway Pressure ("CPAP") therapy is a common nonsurgical treatment primarily used to treat sleep apnea. CPAP therapy typically involves the use of a nasal or facemask device and a CPAP device helps individuals breathe by increasing the air pressure in an individual's throat.

39.    Sleep Apnea is a common sleep disorder characterized by repeated interruptions in breathing throughout an individual's sleep cycle. These interruptions, called "apneas," are caused when the soft tissue in an individual's airway collapses. The airway collapse prevents oxygen from reaching the individual's lungs which can cause a buildup of carbon dioxide. If the individual's brain senses the buildup of carbon dioxide, it will briefly rouse the individual from sleep so that the individual's airway can reopen. Often these interruptions are so brief that the individual will not remember. Despite the brevity of the interruptions, the sleep cycle disruption caused by sleep apnea can dramatically impact a person's lifestyle, including negatively impacting energy,  mental performance, and long-term health. CPAP therapy helps treat sleep apnea by

preventing the person's airway from collapsing while breathing during sleep cycles, which can help prevent interruptions in breathing.

### B.  Bi-Level Positive Airway Pressure Therapy

40.    Bi-Level Positive Airway Pressure ("BiPAP") therapy is a common alternative to CPAP therapy for treating sleep apnea. Similar to CPAP therapy, BiPAP therapy is nonsurgical and involves the use of a nasal or facemask device to maintain air pressure in an individual's airway. BiPAP is distinguishable from CPAP therapy, however, because BiPAP devices deliver two alternating levels—inspiratory and expiratory—of pressurized air into a person's airway, rather than the single continuous level of pressurized air delivered by a CPAP device. The inspiratory positive airway pressure assists a person as a breath is taken in. Conversely, the expiratory positive airway pressure is applied to allow a person to comfortably breathe out. BiPAP devices deliver one level of pressurize air (the inspiratory positive level) to assist as a person inhales, and another level (the expiratory level) as a person exhales.

### C.    Philips' Sleep & Respiratory Care Devices Were Endangering its Users

41.    On April 26, 2021, as part of its Quarterly Report for Q1 2021, Philips disclosed for the first time, under a section entitled "Regulatory Update," that device user reports had led to a discovery that the type of PE-PUR "sound abatement" foam Philips used to minimize noise in several CPAP and BiPAP respirators posed health risks to its users.  Specifically, Philips disclosed that "the [PE-PUR] foam may degrade under certain circumstances, influenced by factors including use of unapproved cleaning methods, such as ozone[], and certain environmental conditions involving high humidity and temperature."[2]

---

[2] *First Quarter Results*, PHILIPS (Apr. 26 2021),
https://www.results.philips.com/publications/q121/downloads/pdf/en/philips-first-quarter-results-2021-report.pdf
(accessed June 30, 2021).

42.     Philips has utilized polyester-based polyurethane (PE-PUR) sound abatement foam to dampen device vibration and sound during routine operation.

43.     On June 14, 2021, as a result of extensive ongoing review following the announcement on April 26, 2021, Philips issued a recall notification for specific affected devices.[3]

44.     In its recall notification, Philips identified examples of potential risks which include exposure to degraded sound abatement foam particles and exposure to chemical emissions from the sound abatement foam material.[4]

45.     Philips reported that, based on lab testing and evaluations, it may be possible that these potential health risks could result in a wide range of potential patient impact, from transient potential injuries, symptoms and complications, as well as possibly serious injury which can be life-threatening or cause permanent impairment, or require medical intervention to preclude permanent impairment.[5]

46.     According to Philips' recall notice, the PE-PUR Foam used in Recalled Devices puts Recalled Device users at risk of suffering from the following health harms: "*Particulate exposure* can cause headache, irritation [skin, eye, and respiratory tract], inflammation, respiratory issues, and possible toxic and carcinogenic effects[;]" whereas the "potential risks of *chemical exposure due to off-gassing* include headache, irritation, hypersensitivity, nausea/vomiting, and possible toxic and *carcinogenic* effects."[6]

---

[3] *Medical Device recall notification (U.S. only) / field safety notice (International Markets)*, PHILIPS RESPIRONICS (June 14, 2021), https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 30, 2021).
[4] *Philips issues recall notification*, PHILIPS RESPIRONICS (June 14, 2021), https://www.usa.philips.com/a-w/about/news/archive/standard/news/press/2021/20210614-philips-issues-recall-notification-to-mitigate-potential-health-risks-related-to-the-sound-abatement-foam-component-in-certain-sleep-and-respiratory-care-devices.html (accessed June 30, 2021) (emphasis added).
[5] *Id.*
[6] *Philips issues recall notification*, PHILIPS RESPIRONICS (June 14, 2021), https://www.usa.philips.com/a-w/about/news/archive/standard/news/press/2021/20210614-philips-issues-recall-notification-to-mitigate-potential-

47.     On June 14, 2021, Philips also issued a brief report titled "Clinical Information for Physicians." In this report, Philips disclosed that "[l]ab analysis of the degraded foam reveals the presence of potentially harmful chemicals including:

-Toluene Diamine

-Toluene Diisocyanate

-Diethylene glycol."[7]

48.     In its report titled "Clinical Information for Physicians," Philips also disclosed that lab testing performed by and for Philips has also identified the presence of Volatile Organic Compounds (VOCS) which may be emitted from the sound abatement foam component of the affected devices. "VOCs are emitted as gases from the foam included in the [affected devices] and may have short- and long-term adverse health effects. Standard testing identified two compounds of concern may be emitted from the foam that are outside of safety thresholds. The compounds identified are the following:

-Dimethyl Diazine

-Phenol, 2,6-bis (1,1-dimethylethyl)-4-(1-methylpropyl)-"[8]

**D.     Philips' Recalled Devices**

49.     In total, Philips announced that "[b]etween 3 million and 4 million" devices are

---

health-risks-related-to-the-sound-abatement-foam-component-in-certain-sleep-and-respiratory-care-devices.html (accessed June 30, 2021) (emphasis added).
[7] *Sleep and Respiratory Care update, Clinical information for physicians*, PHILIPS (June 14, 2021), https://www.philips.com/c-dam/b2bhc/master/landing-pages/src/update/documents/philips-recall-clinical-information-for-physicians-and-providers.pdf?_ga=2.43039205.1759564883.1625006706212130326.1624473291&_gl=1*2nhu1w*_ga*MjEyMTMwMzI2LjE2MjQ0NzMyOTE.*_ga_2NMXNNS6LE*MTYyNTE1MTQ3MC4xNi4xLjE2MjUxNTE1OTUuMTg. (accessed June 30, 2021).
[8] *Id.*

targeted in the recall.[9]

50.     The list of the devices recalled by Phillips (the "Recalled Devices") include:

| Philips CPAP and BiLevel PAP Devices Subject to Recall[10] | |
|---|---|
| **Device Name/Model** | **Type** |
| Philips E30 (Emergency Use Authorization) | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips DreamStation ASV | Continuous Ventilator, Non-life Supporting |
| Philips DreamStation ST, AVAPS | Continuous Ventilator, Non-life Supporting |
| Philips SystemOne ASV4 | Continuous Ventilator, Non-life Supporting |
| Philips C Series ASV, S/T, AVAPS | Continuous Ventilator, Non-life Supporting |
| Philips OmniLab Advanced Plus, In-Lab Titration Device | Continuous Ventilator, Non-life Supporting |
| Philips SystemOne (Q Series) | Non-continuous Ventilator |
| Philips DreamStation, CPAP, Auto CPAP, BiPAP) | Non-continuous Ventilator |
| Philips DreamStation GO, CPAP, APAP | Non-continuous Ventilator |
| Philips Dorma 400, 500, CPAP | Non-continuous Ventilator |
| Philips REMStar SE Auto, CPAP | Non-continuous Ventilator |

| Philips Mechanical Respirator Devices Subject to Recall[11] | |
|---|---|
| **Philips Device Name/Model** | **Type** |
| Philips Trilogy 100 Ventilator | Continuous Ventilator |
| Philips Trilogy 200 Ventilator | Continuous Ventilator |
| Philips Garbin Plus, Aeris, LifeVent Ventilator | Continuous Ventilator |
| Philips A-Series BiPAP Hybrid A30 | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |

---

[9] Associated Press, *Philips recalls ventilators, sleep apnea machines due to health risks*, NBC NEWS, https://www.nbcnews.com/business/consumer/philips-recalls-ventilators-sleep-apnea-machines-due-health-risks-n1270725 (accessed June 29, 2021).
[10] *Medical Device recall notification (U.S. only) / field safety notice (International Markets)*, PHILIPS RESPIRONICS (June 14, 2021), https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 30, 2021).
[11] *Id.*

| Philips A-Series BiPAP V30 Auto Ventilator | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| --- | --- |
| Philips A-Series BiPAP A40 | Continuous Ventilator, Non-life Supporting |
| Philips A-Series BiPAP A30 | Continuous Ventilator, Non-life Supporting |

51.     Philips issued the following advice to patients using any of the Recalled Devices:

- "For patients using BiLevel PAP and CPAP devices: Discontinue use of affected units and consult with physicians to determine the benefits of continuing therapy and potential risks."[12]

- "For patients using life-sustaining mechanical ventilator devices: DO NOT discontinue or alter prescribed therapy, without consulting physicians to determine appropriate next steps."[13]

**E.      Philips Unreasonably Delayed its Recall**

52.     Defendants have not disclosed when they first received reports from users of its Sleep & Respiratory Care devices "regarding the presence of black debris/particles within the airpath circuit (extending from the device outlet, humidifier, tubing, and mask)."[14] However, given how long ago the first of the Recalled Devices came to market, it is unlikely that Defendantsonly recently learned of these issues.

53.     Thus, as a result of user reports and other testing performed by and on behalf of Defendants, Defendants were aware of the degradation of the PE-PUR sound abatement foam used in the Recalled Devices, yet continued to manufacture, market, and sell the Recalled Devices with such awareness for a significant period of time.  During this period, Defendants unreasonably and unjustly profited from the manufacture and sale of the Recalled Devices and unreasonably put

---

[12]*Id.* (emphasis in original).
[13]*Id.* (emphasis in original).
[14] *Medical Device recall notification (U.S. only) / field safety notice (International Markets)*, PHILIPS RESPIRONICS https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 30, 2021).

users of the Recalled Devices at risk of developing adverse health effects, including, but not limited to, an inflammatory respiratory response, adverse effects to organs and/or cancer.

## PLAINTIFF MICHAEL ADENIYI

54.     Plaintiff MICHAEL ADENIYI is an adult resident and citizen of St. Joseph County, Indiana. Plaintiff has been a resident a citizen of St. Joseph County, Indiana since approximately 2003.

55.     Plaintiff was a resident and citizen of St. Joseph County, Indiana where the devices were purchased.

56.     In approximately 2014 Plaintiff was prescribed the use of and purchased the System 160 series unit, referred to previously. In approximately 2017 Plaintiff was prescribed the use of and purchased the Dreamstation CPAP unit, referred to previously. These subject devices prescribed for and purchased by Plaintiff are among the Recalled Devices.

57.      At the time Plaintiff was prescribed the use of and purchased the subject devices, he was a resident and citizen of St. Joseph County, Indiana.

58.     Since approximately 2014, Plaintiff used the subject devices daily to treat his sleep apnea.

59.     At all times Plaintiff used the subject devices, he used the subject devices in accordance with the guidelines, manual, and instructions for use set forth by Defendants.

60.     At all times Plaintiff used the subject devices, he used the subject devices for a purpose for which the subject devices were marketed, designed, and intended.

61.     At all times Plaintiff used the subject devices, he used the subject devices in accordance with the directions and instructions issued who prescribed the use of the subject devices.

62.    After, and as a result of using the subject devices, Plaintiff has suffered personal injuries including, but not limited to, an inflammatory respiratory response, adverse effects to organs and/or cancer. These injuries would not have occurred but for the defective nature of the subject devices and/or Defendants' wrongful conduct.

63.    Plaintiff was diagnosed with Stage IV left lower lung adenocarcinoma in November 2021.

64.    Plaintiff's use of the subject devices caused or significantly contributed to his development and progression of his pulmonary condition, which has permanently changed his life.

65.    By reason of the foregoing, Plaintiff has had to undergo significant treatment, will be required to undergo significant treatment in the future, and now requires constant and continuous medical monitoring and treatment due to the defective nature of the subject devices and/or Defendants' wrongful conduct.

66.    As a result of the aforesaid conduct and subject devices manufactured, designed, sold, distributed, advertised, and promoted by Defendants, Plaintiff was injured, resulting in severe mental and physical pain and suffering. Such injuries will result in some permanent disability to his person. As a result of such injuries, Plaintiff has suffered damages for which compensatory damages should be awarded.

## CAUSES OF ACTION

### COUNT I
### STRICT PRODUCTS LIABILITY – DESIGN DEFECT

67.    Plaintiff adopts and incorporates by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

68.    At all times herein mentioned, Defendants were involved in researching, designing, developing, manufacturing, testing, selling and/or distributing the Recalled Devices, including the subject devices, which are defective and unreasonably dangerous.

69.    The subject devices were defective in its design or formulation in that it is not reasonably fit, suitable or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design. The subject devices were defective in design because it causes headaches, irritation of the skin, eye, and respiratory tract, inflammation respiratory issues, asthma, adverse effect to organs (including the kidneys and liver), hypersensitivity, nausea, vomiting, and toxic and carcinogenic effects. It is more dangerous than other available devices indicated for similar conditions and uses, and the utility of the device does not outweigh its risks.

70.    The defective condition of the subject devices rendered it unreasonably dangerous and/or not reasonably safe, and the device was in this defective condition at the time it left the hands of Defendants. Subject devices were expected to and did reach Plaintiff and his physician without substantial change in the condition in which it was designed, manufactured, labeled, sold, distributed, marketed, promoted, supplied, and otherwise released into the stream of commerce.

71.    The subject devices were used for its intended purposes by Plaintiff and the subject devices was not materially altered or modified prior to its use.

72.    The subject devices are defective in design because the PE-PUR foam comprising part of the device can degrade into particles that enter the device's air pathway and can off-gas certain chemicals. These characteristics cause, among other problems, including, but not limited to, an inflammatory respiratory response, adverse effects to organs and/or cancer.

73.    At or before the time the subject devices were released on the market and/or sold to Plaintiff, Defendants could have designed the product to make it less prone to causing the above

listed health harms, a technically feasible safer alternative design that would have prevented the harm Plaintiff suffered without substantially impairing the function of the device.

74.    Plaintiff was not able to discover, nor could he have discovered through the exercise of reasonable diligence, the defective nature of the subject devices. Further, in no way could Plaintiff have known that Defendants had designed, developed, and manufactured the subject devices in a way as to make the risk of harm or injury outweigh any benefits.

75.    The subject devices are and were being used in a way which the Defendants intended at the time it was prescribed to Plaintiff.

76.    Defendants had a duty to create a device that was not unreasonably dangerous for its normal, intended use and breached this duty.

77.    Defendants knew or should have known that the Recalled Devices, including the subject devices, would be prescribed to patients and that physicians and patients were relying on them to furnish a suitable device. Further, Defendants knew or should have known that patients for whom the Recalled Devices would be used, such as Plaintiff, could be and would be affected by the defective design and composition of the devices.

78.    Defendants designed, manufactured, advertised, promoted, marketed, sold, and distributed a defective device which, when used in its intended or reasonably foreseeable manner, created an unreasonable risk to the health of consumers, such as Plaintiff, and Defendants are therefore strictly liable for the injuries sustained by Plaintiff.

79.    As a direct and proximate result of Defendants' placement of the subject devices into the stream of commerce and Plaintiff's use of the product as designed, manufactured, sold, supplied, and introduced into the stream of commerce by Defendants, Plaintiff suffered serious

physical and mental injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

## COUNT II
## STRICT PRODUCTS LIABILITY – FAILURE TO WARN

80.     Plaintiff adopts and incorporates by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

81.     At all times herein mentioned, Defendants designed and developed, and knew or should have known about significant risks with subject devices including, but not limited to, an inflammatory respiratory response, adverse effects to organs and/or cancer.

82.     At all times herein mentioned, Defendants advertised, promoted, marketed, sold, and distributed the subject devices that was used by the Plaintiff.

83.     The subject devices were expected to and did reach the usual consumers, handlers, and persons coming into contact with said device without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

84.     Defendants each had an independent duty and continuing duty to warn the medical community and Plaintiff's physicians about the significance of the risks with the subject devices, including, but not limited to, an inflammatory respiratory response, adverse effects to organs and/or cancer.

85.     Plaintiff used the subject devices in a manner intended and foreseeable by Defendants.

86.     The subject devices were defective due to inadequate warnings because Defendants knew or should have known that the product created significantly increased adverse risks, including, but not limited to, an inflammatory respiratory response, adverse effects to organs

and/or cancer and failed to warn the medical community and Plaintiff's physician of the nature of such risks.

87.    Defendants omitted and downplayed the significantly increased risks of an inflammatory respiratory response, adverse effects to organs, cancer and/or other health harms with the subject devices that Defendants knew or should have known from previous testing and research even prior to subject devices' FDA approval.

88.    The subject devices' labeling and warnings were defective because they omitted and inadequately warned of the device's risk of an inflammatory respiratory response, adverse effects to organs, cancer and/or other health harms.

89.    Although physicians are supposed to weigh the risks and benefits before prescribing a medical device, Defendants knew that their omissions would cause physicians, including Plaintiff's physician, to prescribe the subject devices without being able to adequately weigh the risk of device's risk of an inflammatory respiratory response, adverse effects to organs, cancer and/or other health harms.

90.    If Defendants would have properly warned about the subject devices' risk of an inflammatory respiratory response, adverse effects to organs, cancer and/or other health harms, no reasonable physician, including Plaintiff's physician, would have recommended or prescribed the subject devices because the potential benefits of weight loss are significantly outweighed by the risk of an inflammatory respiratory response, adverse effects to organs, cancer, and/or other health harms.

91.    Had Defendants reasonably provided adequate warnings of an inflammatory respiratory response, adverse effects to organs, and/or cancer, such warnings would have been heeded and no healthcare professional, including Plaintiff's physician, would have prescribed the

subject devices and no consumer, including Plaintiff, would have purchased and/or used the subject devices.

92.    As a direct and proximate result of the subject devices' defects as described herein, Plaintiff developed significant adverse effects, including, but not limited to, an inflammatory respiratory response, adverse effects to organs, and/or cancer, and thus suffered permanent and continuous injuries, pain and suffering, disability and impairment. Plaintiff has further suffered emotional trauma, harm and injuries that will continue into the future. Plaintiff has lost his ability to live a normal life and will continue to be so diminished in the future.

<u>**COUNT III**</u>
<u>**STRICT LIABILITY – MANUFACTURING DEFECT**</u>

93.    Plaintiff adopts and incorporates by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

94.    At all times herein mentioned, Defendants were involved in designing, developing, manufacturing, selling and/or distributing the Recalled Devices, including the subject devices, which are defective and unreasonably dangerous.

95.    The subject devices were expected to and did reach Plaintiff without a substantial change in its condition.

96.    The finished subject devices deviated, in terms of construction and quality, from the specifications or planned output in a manner that made it unreasonably dangerous.

97.    At all relevant times, the Recalled Devices, including the subject devices, were defectively and improperly manufactured and designed by Defendants in that Defendants continued to supply consumers with the Recalled Devices despite having full knowledge that the devices posed substantial and avoidable bodily injury, including, but not limited to an inflammatory respiratory response, adverse effects to organs, cancer and/or other health harms.

98.    The foreseeable risks of the subject devices were known and could have been avoided.

99.    At all relevant times, the subject devices were defectively manufactured by Defendants in that its design and formulation is more dangerous than what an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

100.    At all relevant times, Defendants actively deceived users that their use of the Recalled Devices posed safety risks that far outweighed any benefits.

101.    Furthermore, the Recalled Devices, including the subject devices, were defectively manufactured in that the PE-PUR foam comprising part of the devices can degrade into particles that enter the devices' air pathway and can off-gas certain chemicals. These characteristics cause, among other problems, an inflammatory respiratory response, adverse effects to organs and/or cancer. Plaintiff and other similarly situated consumers were unknowingly subjected to receiving different doses of toxins, carcinogens, and other deleterious components and contaminants when using the Recalled Devices.

102.    As a direct and proximate result of the defective manufacture of the subject devices, Plaintiff suffered and will continue to suffer damages for which he is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

**COUNT IV**
**NEGLIGENCE/GROSS NEGLIGENCE**

103.    Plaintiff adopts and incorporates by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

104.    Defendants had a duty to exercise reasonable care in designing, developing, researching, testing, manufacturing, marketing, supplying, promoting, selling, and distribution of the Recalled Devices, including the subject devices.

105.    Defendants knew or should have known that using the subject devices created a significantly increased risk of an inflammatory respiratory response, adverse effects to organs and/or cancer, among other health harms.

106.    The negligence of the Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

- Defendants designed and developed the Recalled Devices without thoroughly or adequately testing the devices;

- Defendants sold the Recalled Devices without making proper and sufficient tests to determine the dangers to the users;

- Defendants failed to adequately and correctly warn the Plaintiff, the public, and the medical community, of the risks associated with the Recalled Devices, including, but not limited to, an inflammatory respiratory response, adverse effects to organs, and/or cancer, among other health harms;

- Defendants advertised and recommended the use of the Recalled Devices for treatment of sleep apnea and other conditions without sufficient knowledge as to the significance risks of an inflammatory respiratory response, adverse effects to organs, and/or cancer, among other health harms;

- ▪ Defendants failed to exercise reasonable care in designing the Recalled Devices in a manner which was dangerous to the users;

  Defendants negligently manufactured the Recalled Devices in a manner which was dangerous to the users;

- ▪ Defendants failed to exercise reasonable care when they collectively decided to conceal information concerning an inflammatory respiratory response, adverse effects to organs, and/or cancer risks.

107.    Additionally, Defendants under-reported, underestimated, and downplayed the serious dangers of the Recalled Devices' association with an inflammatory respiratory response, adverse effects to organs, and/or cancer and other health harms.

108.    Defendants negligently compared the safety risk and/or dangers of the subject devices with other forms of treatment for sleep apnea and similar conditions.

109.    Defendants also failed to warn Plaintiff, prior to actively encouraging the sale of the subject devices, either directly or indirectly, orally or in writing, about the need for more comprehensive, more regular medical monitoring than usual to ensure early detection of an inflammatory respiratory response, adverse effects to organs, and/or cancer among other health harms.

110.    Defendants specifically failed to exercise reasonable care when they failed to accompany the subject devices with proper and/or accurate warnings regarding *all* adverse side effects—namely an inflammatory respiratory response, adverse effects to organs, and/or cancer—associated with the use of the subject devices.

111.    Once Defendants gained additional information about the Recalled Devices' association with an inflammatory respiratory response, adverse effects to organs, and/or cancer, it

failed to update its warnings and thereafter accompany the Recalled Devices with adequate warnings regarding an inflammatory respiratory response, adverse effects to organs, and/or cancer.

112.    Despite the fact that Defendants knew or should have known that the Recalled Devices caused unreasonably dangerous side effects, like an inflammatory respiratory response, adverse effects to organs, and/or cancer, they made conscious decisions to downplay these risks and continue to market, manufacture, distribute, and/or sell the devices to physicians and patients, including the Plaintiff.

113.    Defendants knew or should have known that consumers, such as Plaintiff, would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

114.    Defendants' negligence was the proximate cause of Plaintiff's inflammatory respiratory response, adverse effects to organs, and/or cancer-related injuries, among many other health harms, which Plaintiff suffered and/or will continue to suffer.

115.    As a result of the foregoing acts and omissions, the Plaintiff was caused to suffer serious and dangerous side effects that led to an inflammatory respiratory response, adverse effects to organs, and/or cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of redeveloping adverse effects.

116.    As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

## COUNT V
## NEGLIGENT MISREPRESENTATION

117.    Plaintiff adopts and incorporates by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

118.    Defendants had a duty to exercise reasonable care to those whom they provided device information about the Recalled Devices and to all those relying on the information provided, including Plaintiff, his healthcare providers, and the public in general that the devices had been tested and found to be safe and effective for treating sleep apnea.

119.    Defendants, in the course of selling the Recalled Devices, supplied information about the devices through television commercials, advertisements, marketing campaigns, sales representatives, labeling, and warnings.

120.    Defendants breached their duty by misrepresenting the Recalled Devices' safety to the medical and healthcare community, to the Plaintiff, and the public in general.

121.    However, Defendants failed to exercise reasonable care because their goal should have been to put safety before their profits by providing individuals with the realistic risks and expectations that the Recalled Devices could cause an inflammatory respiratory response, adverse effects to organs, and/or cancer among other serious injuries.

122.    Defendants' representations were made without properly conducting sufficient testing and by providing insufficient warnings about the Recalled Devices' potential risks.

123.    Defendants' false representations that the Recalled Devices were safe for consumers and their failure to disclose material past and existing facts of the Recalled Devices' risk of an inflammatory respiratory response, adverse effects of organs, and/or cancer were made or omitted with the intent to induce Plaintiff to rely upon those facts or omissions.

124.    Plaintiff was unaware and did not know that the subject devices was unsafe for the purpose of treating sleep apnea because it caused a significant increased risk of an inflammatory respiratory response, adverse effects of organs, and/or cancer until *after* he had been exposed to carcinogenic particles and gasses.

125.    Plaintiff justifiably relied upon the false representations of Defendants.

126.    Had Defendants reasonably and purposefully provided adequate warnings of inflammatory respiratory response, adverse effects of organs, and/or cancer and other serious injuries, such warnings would have been heeded and no healthcare professional, including Plaintiff's physician, would have prescribed the Recalled Devices and no consumer, including Plaintiff, would have purchased and/or used the Recalled Devices.

127.    As a direct and proximate result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects, including, but not limited to, inflammatory respiratory effects, adverse effects to organs, and/or cancer, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of redeveloping adverse effects.

128.    As a result of the foregoing acts and omissions, Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

## COUNT VI
## FRAUD

129. Plaintiff adopts and incorporates by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

130. At all relevant times, Defendants designed manufactured, assembled, inspected, tested, packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed the Recalled Devices into the stream of commerce, and therefore owed a duty of reasonable care to avoid causing harm to consumers, such as Plaintiff.

131. Defendants knowingly made fraudulent statements regarding the safety of the Recalled Devices and the substantial health risks associated with using the devices, all the while intending to deceive Plaintiff and the general public.

132. At all reasonable times, Defendants fraudulently misrepresented the Recalled Devices as safe, when in fact the devices posed unreasonable risks of substantial bodily injury. Due to these and other features, the Recalled Devices are not fit for their ordinary, intended use as treatment devices for sleep apnea and similar respiratory conditions.

133. Defendants touted the Recalled Devices as safe, despite a failure to adequately research or test the devices to assess their safety prior to marketing and promoting their use.

134. Defendants further falsely represented the nature and risks associated with the Recalled Devices, and their marketing and strategy regarding the same, in general statements to the media, general public, and federal agencies.

135. Defendants' fraudulent misrepresentations and omissions were material facts that were essential to Plaintiff's decision to purchase the subject devices.

136. Plaintiff was unaware that Defendants were knowingly concealing these material facts, which Plaintiff relied on to his detriment.

137. By knowingly misrepresenting this material information, Defendants breached their duty to protect Plaintiff and consumers.

138.    Plaintiff justifiably relied to his detriment on Defendants' fraudulent statements. Had Plaintiff been adequately informed of the material facts concealed from him regarding the safety of the subject devices, and not intentionally deceived by Defendants, he would not have acquired/purchased or used the subject devices.

139.    As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff suffered and continues to suffer from the injuries and damages for which he is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorney fees.

## COUNT VII
## FRAUDULENT CONCEALMENT

140.    Plaintiff adopts and incorporates by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

141.    At all relevant times, Defendants designed, manufactured, assembled, inspected, tested, packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed the Recalled Devices into the stream of commerce, and therefore owed a duty of reasonable care to avoid causing harm to those that used the devices, such as Plaintiff.

142.    Defendants had a duty to disclose material facts about the Recalled Devices that would substantially affect Plaintiff's and the general public's use when purchasing the devices.

143.    At all reasonable times, Defendants fraudulently misrepresented the Recalled Devices as safe, when in fact the devices posed unreasonable risks of substantial bodily injury. Therefore, the devices are not fit for their ordinary and intended uses.

144.    Defendants actually knew about all of the above facts.

145.    At all relevant times, Defendants fraudulently and deceptively concealed their failure to adequately research or test the Recalled Devices to assess their safety before marketing to susceptible users.

146.    Defendants further falsely represented the nature and risks associated with the Recalled Devices, and their marketing and strategy regarding the same, in general statements to the media, general public, and federal agencies.

147.    Defendants' misrepresentations and omissions were material facts that were essential to Plaintiff's decision making when purchasing and using the subject devices.

148.    Plaintiff was completely unaware that Defendants were concealing these material facts.

149.    Defendants intentionally deceived and concealed material information concerning the safety of the Recalled Devices from Plaintiff and the general public, which had a direct impact on Plaintiff's and consumers' health and wellbeing.

150.    Plaintiff relied to his detriment on Defendants' fraudulent concealment and omissions. Had Plaintiff been adequately informed of the material facts regarding the safety of the Recalled Devices, and not intentionally deceived by Defendants, he would not have acquired/purchased, used, or been injured by the subject devices.

151.    As a direct and proximate result of Defendants' fraudulent concealment, Plaintiff suffered and continues to suffer from the injuries and damages for which he is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorney fees.

## COUNT VIII
## UNJUST ENRICHMENT

152.    Plaintiff adopts and incorporates by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

153.    At all relevant times, Defendants designed, manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed the Recalled Devices into the stream of commerce, and therefore owed a duty of reasonable care to avoid causing harm to those that used the devices, such as Plaintiff.

154.    Defendants were unjustly enriched as a result of their wrongful conduct, including through the false and misleading marketing, promotions, and advertisements that failed to discuss the unreasonable risks of substantial bodily injury resulting from the use of the Recalled Devices. Defendants were also unjustly enriched through their developing, manufacturing, promoting, and selling the Recalled Devices without adequately testing and investigating their potential side effects and health impacts.

155.    Defendants requested and received a measurable benefit at the expense of Plaintiff in the form of payment for the subject devices.

156.    Defendants appreciated, recognized, and chose to accept the monetary benefits Plaintiff conferred onto Defendants at the Plaintiff's detriment. These benefits were the expected result of Defendants acting in their pecuniary interests at the expense of its customers.

157.    There is no justification for Defendants' enrichment. It would be inequitable, unconscionable, and unjust for Defendants to be permitted to retain these benefits because the benefits were procured as a result of their wrongful conduct.

158.    Defendants wrongfully obfuscated the harm caused be their conduct. Thus, Plaintiff, who mistakenly enriched Defendants by relying on Defendants' fraudulent representations, could not and did not know the effect that using the subject devices would have on

Plaintiff's health.

159.    Acceptance of the benefit by Defendants under these circumstances would be inequitable.

160.    Plaintiff is entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiff to the position he occupied prior to dealing with Defendants. Given the importance of respiratory health and severity of injuries the subject devices can cause, Defendants were reasonably notified that Plaintiff would expect compensation from Defendants' unjust enrichment stemming from their wrongful actions.

161.    Plaintiff demands judgment against Defendants for compensatory, treble, and punitive damages, medical monitoring to diagnose injuries from the subject devices at an earlier date to allow for timely treatment and prevention of exacerbation of injuries, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT IX
## BREACH OF EXPRESS WARRANTIES

162.    Plaintiff adopts and incorporates by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

163.    The Defendants, through their advertising, promotional materials, and labeling, expressly warranted and affirmed that the Recalled Devices were safe for their intended uses and for uses which were reasonably foreseeable.

164.    Defendants' representations became a basis of the bargain.

165.    Defendants made express warranties which extended beyond delivery of the Recalled Devices and expressly warranted for future performance of the devices. Defendants advertised, promoted, and labeled the Recalled Devices as being safe and effective for the treatment of sleep apnea.

166.    At all relevant times, Defendants breached said express warranties in that the

Recalled Devices were unsafe and caused an inflammatory respiratory response, adverse effects of organs and/or cancer among other harms. Plaintiff foreseeably used the subject devices without knowing of the harmful and substantial consequences to his health.

167. At all relevant times, Defendants had knowledge of the hazards and health risks posed by the Recalled Devices when used.

168. At all relevant times, Defendants willfully failed to disclose the defects and health risks of the Recalled Devices to Plaintiff and the rest of the public that used the devices.

169. In reliance upon the express warranties made by Defendants, Plaintiff acquired/purchased and used the subject devices, believing the subject devices was inherently safe and/or a safe treatment for sleep apnea.

170. Plaintiff notified Defendants of the breach.

171. As a direct and proximate result of Defendants' breach of their express warranties concerning the subject devices, Plaintiff suffered and continues to suffer from the injuries and damages for which he is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

**COUNT X**
**BREACH OF THE IMPLIED WARRANTY OF FITNESS**
**FOR A PARTICULAR PURPOSE**

172. Plaintiff adopts and incorporates by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

173. At all relevant times, Defendants, through their advertising and promotional materials, expressly and impliedly warranted and affirmed that the Recalled Devices' purpose was to offer a reasonably safe treatment for sleep apnea and similar health problems.

174. Defendants touted the Recalled Devices as safe, despite knowingly having never adequately researched or tested the devices to assess their safety before placing the devices on the

market and promoting them to consumers.

175.    Defendants intended to make Plaintiff and the general public believe the Recalled Devices were safe.

176.    Defendants knowingly mislead Plaintiff and the general public to believe the Recalled Devices were safe for use, despite knowing that the devices could lead to serious injuries, all of which Defendants knew, or by the exercise of reasonable care, should have known, ordinaryconsumers such as Plaintiff would be victim to.

177.    At all relevant times, Defendants had knowledge of the hazards and health risks posed by the Recalled Devices when used.

178.    At all relevant times, Defendants willfully failed to disclose the defects and health risks of the Recalled Devices to Plaintiff and the consuming public.

179.    Plaintiff relied to his detriment on the information publicized by Defendants.

180.    In reliance upon these implied warranties as to the safety of the subject devices by Defendants, Plaintiff acquired/purchased and used the subject devices, believing that the subject devices was inherently safe.

181.    Plaintiff notified Defendants of the breach.

182.    As a direct and proximate Defendants' warranties concerning the subject devices, as described herein, Plaintiff suffered and continues to suffer from the injuries and damages for which he is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

<u>**COUNT XI**</u>
<u>**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**</u>

183.    Plaintiff adopts and incorporates by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

184.    At all relevant times Defendants have been a merchant in regard to the Recalled

Devices they created and sold to consumers.

185.    Defendants breached their implied warranty of merchantability since the Recalled Devices were defective when created and designed, and do not conform with the promises represented on their labels.

186.    Defendants failed to comply with merchantability requirements, as the Recalled Devices do not achieve the ordinary purposes they advertise: a healthy treatment for respiratory conditions such as sleep apnea.

187.    Beyond Defendants' own direct sales of the Recalled Devices, Plaintiff and other consumers are third-party beneficiaries of Defendants' agreements with its distributors, dealers, and sellers for the distribution, dealing, and sale of the Recalled Devices to consumers. Plaintiffs and consumers are the intended beneficiaries of Defendants' implied warranties since the Recalled Devices are manufactured with the express and intended purpose of selling the devices to consumers.

188.    As a direct and proximate result of Defendants' breach of their implied warranties of merchantability regarding the subject devices, Plaintiff was damaged because, had he been aware of the unmerchantable condition of the subject devices, he would may have not acquired/purchased the subject devices and not suffered injuries and damages from their use, for which he is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

## **LOSS OF CONSORTIUM**

189.    Plaintiff GRACE ADENIYI adopts and incorporates by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

190.    At all times relevant, GRACE ADENIYI and MICHAEL ADENIYI were husband and wife residing together as a married couple in St. Joseph County, Indiana.

191.    As a result of the injuries suffered by MICHAEL ADENIYI and the treatment undertaken and which continues to be undertaken for him, GRACE ADENIYI has lost or suffered the diminishment of the love, care, affection, services and society of her husband, MICHAEL ADENIYI. GRACE ADENIYI suffered a loss of consortium arising from the injuries and losses suffered by her husband, as described in this complaint.  As a result, GRACE ADENIYI is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

## **PUNITIVE DAMAGES**

192.    Plaintiff adopts and incorporates by reference all of the foregoing language of this Complaint as  fully set forth herein and further states as follows.

193.    Defendants' conduct described herein consisted of oppression, fraud, and/or malice, and was done with advance knowledge, conscious disregard of the safety of others, and/or ratification by Defendants' officers, directors, and/or managing agents.

194.    Despite their knowledge of the Recalled Devices' propensity to cause an inflammatory respiratory response, adverse effects of organs and/ or cancer and other serious injuries, Defendants chose profits over the safety of American citizens suffering with sleep apnea when they sought to create and market a device posing significant health risks.

195.    Despite having substantial information about the Recalled Devices' serious and unreasonable side effects, Defendants intentionally and recklessly failed to adequately warn the public, physicians, and the medical community.

196.    Further, despite having substantial information about the Recalled Devices' serious and unreasonable side effects, Defendants failed to make the decision to pull the devices from the market after receiving indications and after receiving reports from consumers who were experiencing serious injuries associated with the use of the devices.

197.    Defendants downplayed and recklessly disregarded their knowledge of the defective nature of the Recalled Devices' potential for causing serious injuries.

198.    Defendants chose to do nothing to warn the public about serious and undisclosed side effects with the Recalled Devices.

199.    Defendants recklessly failed to warn and adequately instruct physicians, including Plaintiff's physician, regarding the increase in reports from consumers who were experiencing serious injuries associated with the use of the Recalled Devices.

200.    Consequently, Defendants are liable for punitive damages in an amount to be determined by the jury.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment against the Defendants jointly and severally for damages, including punitive damages if applicable, to which he is entitled by law, as well as all costs of this action, interest and attorneys' fees, to the full extent of the law, whether arising under the common law and/or statutory law, including:

a.    Judgment for Plaintiffs and against Defendants;

b.    Damages to compensate Plaintiff for his injuries, economic losses and pain and suffering sustained as a result of the use of Defendants' subject devices;

c.    Damages to compensate Plaintiff, GRACE ADENIYI, for her losses sustained as a result of her husband's injuries and losses resulting from the use of Defendants' subject devices;

d.    Pre and post judgment interest at the lawful rate;

e.    Punitive damages, if applicable, on all applicable Counts as permitted by the law;

f.    A trial by jury on all issues of the case;

g.    An award of attorneys' fees; and

h.    For any other relief as this Court may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all counts and as to all issues.

Dated: _____

Respectfully Submitted,

By:  ___/s/ Douglas D. Small_____
Douglas D. Small
Indiana Bar No. 2040-34
**FOLEY & SMALL, LLP**
1002 E. Jefferson Blvd.
South Bend, IN 46617
Tel: (574) 2887676
Fax: (574) 288-4939
dsmall@foleyandsmall.com

**ATTORNEYS FOR PLAINTIFFS MICHAEL AND GRACE ADENIYI**